Mrs. Lizzie MANIS

v.

TRAVELERS INSURANCE COMPANY.

Civ. A. No. 5127.

United States District Court
E. D. Tennessee, N. D.

Jan. 12, 1965.

H. Calvin Walter, Walter, Gilbertson & Claiborne, Knoxville, Tenn., for plaintiff.

Fred H. Cagle, Jr., Frantz, McConnell & Seymour, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This action was instituted by Mrs. Lizzie Manis, widow of Roscoe Manis, to recover benefits under the Workmen's Com-

pensation Law of Tennessee. Mr. Manis worked for the Tennessee Marble Company for many years. His work involved strenuous physical labor, for example, drilling. On the occasion of his injury he was in a ditch when the dirt and rock beside the ditch fell in, on, and over his body seriously and painfully injuring him in his lower extremities. His injuries included one to his pelvis and a fracture of his hip, the latter necessitating driving a pin in the area of the injury to hold the hip bone together.

Soon after Mr. Manis' unfortunate accident he was taken to one of the hospitals in Knoxville where he remained for a period of some three months. The date of the injury was December 19, 1963 and he was released from the hospital on March 14, 1964. He was a partial cripple when returned to his home, where he remained in bed for at least a part of the time, if not most of the time, until his death on April 14, 1964.

The proof indicates that on April 11, 1964 he had been outside his home walking with crutches; that he sat down in a chair or swing and suddenly fell forward toward the ground, striking his head on an object, with the result that he went into a state of shock or unconsciousness. An effort was made to return him to the hospital for further treatment. He was pronounced dead about fifteen or twenty minutes after he struck his head.

So it is, that we have the case of a long time faithful employee of a marble company who had reached the age of 60 years and who had had a severe accident causing severe injuries. This employee, according to the physician of his employer, was in excellent health at the time he met with his accident and was free from heart defects or the symptoms of heart defects unless a slightly inflated blood pressure could be construed as a heart involvement. Dr. Robert Layman, the company physician, attached no significance to it.

The injuries which this employee suffered while in the performance of his duties when considered with his age, probably rendered him permanently and totally disabled although the case has not been tried on that theory. For this reason, it is not necessary for the Court to make a finding on that issue except to point out that the injuries received in the accident were severe.

The sole question for this Court is whether there is any causal connection between the injuries and resulting death of the employee and his employment with the Tennessee Marble Company.

Three doctors testified on this subject. The first was Dr. M. L. Williams who is not a heart specialist and whose testimony, as indicated to counsel during the argument, was not of much assistance to the Court in the resolution of the decisive question at hand. This observation must not be construed as reflecting in any way upon the qualifications of Dr. Williams, as he impressed the Court as a competent person in his field and a fair and conservative witness on the witness stand. The same observations apply to Dr. Layman, who is and was the marble company's physician. Dr. Layman, again without the slightest reflection on his capabilities as a surgeon, is not a heart specialist and his testimony likewise was of little help to the Court in deciding the question at issue.

The Court does not understand, as Dr. Layman indicated, that a coronary thrombosis occurs in a day or week but that it arises from a process of deterioration in a blood vessel over a period of considerable time and when the time occurs for the clot to break loose into the blood stream, then serious trouble, if not death, arises in the human body.

In this case, Dr. Layman described the employee's heart as perfect or near perfect, and voiced the unequivocal opinion that there was no connection between this well man's serious injuries on December 19, 1963 and his death on April 11, 1964.

As previously indicated, these serious injuries occurred in the lower extremities of the body, thus causing one or both of his limbs to swell and remain swollen until the date of his death. This is the typical type of injury that can

cause embolisms to arise in the blood vessels.

A principle of law that is applicable to this case has been read to the Court by counsel during the argument. It was taken from the case of Milstead, et al v. Kaylor, et al, 1948, 186 Tenn. 642, at page 652, 212 S.W.2d 610, at page 615, where the Court quoted from the West Virginia court as follows:

" 'Where, in the course of and arising out of his employment, an employee in good health and of strong physique suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the injury, but only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disabilities on grounds other than the injury, the presumptions should be resolved in favor of the employee rather than against him.' "

In this case, as previously indicated, the employee was in good health and of strong physique. He had done strenuous labor all of his adult life. While in this condition of good health, he suffered an accident which resulted in serious disability. Under the Tennessee law, the presumption should be resolved in favor of the employee.

This brings us to the testimony of Dr. Frank London who admittedly was the only heart specialist who testified in this case. He stated that the employee's death was caused either by a pulmonary embolism or a coronary thrombosis. It was his opinion that the most likely cause of death, or the more probable cause of death, was an embolus in the blood stream that found its way to the lungs and shut off the air or oxygen in the lung. He was of the opinion that if the employee did not suffer from phlebitis, it was unlikely that his death was caused by a pulmonary embolism.

Doctor Layman stated that he found no phlebitis in the employee's body. But this does not necessarily rule out that possibility for the reason that Dr. Layman did not examine him for phlebitis immediately prior to his death, and did not examine his body after his death.

The proof is abundant from the widow of this employee and from his son-in-law that one of his limbs was swollen after the injury and continued to be swollen until the date of his death. The most reasonable inference to be drawn from the circumstances surrounding his death is that while the employee was in bed in the hospital and in his home and not engaged in physical exercise, that the blood clot had not formed or if it had formed it had not broken loose and that after he had graduated from the bed stage and began to take exercise by sitting up in a chair that the embolism occurred with the resulting fatal accident.

This Court concurs in the opinion of Dr. London that the most probable cause of the death was a pulmonary embolism. The Court, therefore, finds as a fact that the plaintiff's decedent, Roscoe Manis, met with an accident while in the performance of his duties for Tennessee Marble Company on December 19, 1963 and as a result of the injuries received in the accident a pulmonary embolism developed which caused his death. But even if Dr. London is mistaken in his opinion as to the cause of death, and the death occurred from a coronary thrombosis, this fact would not necessarily rule out a causal relation between the decedent's work and his death.

The Court is of the opinion and finds that irrespective of the technical medical term used for the cause of his death, the employee's accident resulted in severe injuries which were causally connected with his death.

In conclusion, mention should be made that during the course of the trial the attorneys for both sides referred to an autopsy. The applicable provision of the Tennessee Workmen's Compensation Act gives any interested party the right to have an autopsy where the cause of death is obscure or disputed. Neither side deemed it necessary to avail themselves of this provision. The doctors have in-

dicated that if an autopsy had been made, the cause of death could have been determined with greater certainty. But, as indicated, the Court is satisfied from the testimony of Dr. London that the more probable cause of the employee's death was a pulmonary embolism and that there was a causal connection between his injury at the marble company and the embolism.

At the conclusion of this memorandum opinion, counsel for the defendant stated that he wanted the record to show that he had made a motion for an autopsy which had been denied. The defendant waited an unreasonable length of time before bringing the question of an autopsy to the attention of the Court. This question was not referred to in the pre-trial order and was not mentioned until the case was called for trial, at which time counsel for the defendant, as the Court understood, stated in substance only that after the introduction of proof the defendant might desire an autopsy.

Counsel will prepare an order in conformity with the findings and conclusions expressed herein.